319 So.2d 920 (1975)
STATE of Louisiana
v.
Earl C. MUSE.
No. 56129.
Supreme Court of Louisiana.
October 1, 1975.
Dissenting Opinion October 14, 1975.
Rehearing Denied October 31, 1975.
Barry F. Viosca, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
In a bill of information Earl Muse was charged with committing a battery with a pistol upon Jerome Hamilton. He was found guilty and sentenced to serve four *921 years at hard labor with credit for time served.
About six o'clock on the afternoon of April 12, 1975, Jerome Hamilton was watching a television news broadcast in a barber shop at the corner of Washington and Magnolia Streets in the city of New Orleans. Suddenly he heard a number of pistol shots being fired outside. As he walked to the door to investigate, he observed a Thunderbird automobile zigzagging down the street. Two people were seen firing pistols at the Thunderbird from across the street. Hamilton was then struck by a bullet below the eye and fell to the floor. He said he did not know either of the individuals who were firing at the Thunderbird, and knew no reason why the accused would shoot him.
Alfred Deleone, a state witness, testified that he and the defendant Earl Muse had a quarrel shortly before six o'clock on the afternoon of April 12. When he later drove past the corner of Washington and Magnolia Streets in his Thunderbird, Earl Muse fired six or seven shots at him with a pistol. At the time Muse was accompanied by another known to Deleone as "Nuck". Deleone stopped his car down the street and ran into his house for a pistol, while his assailants fled into Willow Street. As Deleone pursued them the police arrived at the scene, and Deleone in the ensuing confusion, attempted to dispose of the pistol he was carrying by giving it to a girl friend nearby. Deleone and Muse were arrested shortly thereafter.
At the trial, while Deleone was under cross-examination by the defense, the following colloquy occurred between Deleone and defense counsel.
"Q. How long have you known Jerome? (Jerome Hamilton the victim of the bullet wound.)
A. About twenty years.
Q. You see him a lot?
A. On occasion. I don't see him every day.
Q. Do you ever have occasion to talk to people in the community about Jerome? About his character?
A. No.
Q. You never talked to anybody about him?
A. No.
Q. Do you know Jerome's general reputation in the community?
BY MR. CHEN: (Assistant District Attorney) Objection, Your Honor.
BY THE COURT: I'll have to sustain the State's objection.
BY MR. VIOSCA (Defense Counsel) To which ruling we'd reserve a bill of exception."
The trial judge assigns as reason for his ruling that Hamilton's general reputation in the neighborhood was strictly irrelevant and immaterial to the issue before the Court, and more particularly so since he was an innocent bystander. Alternatively, he asserts sustaining the State's objection was not prejudicial to the defense.
On this appeal defense counsel argues that it was error for the trial judge to restrict his effort on cross-examination to question the witness Deleone as to the character of Hamilton, a principal State witness; and that Hamilton's credibility was at issue and his character was being inquired into for the purpose of impeachment. To support this contention the defense relies upon Section 479 of Title 15 of the Revised Statutes which provides that "Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him."
From these facts it was entirely conceivable that Jerome Hamilton saw the person who fired the shot which caused his wound. Conceivably it was the person accompanying the defendant Muse at the time *922 of the shooting. All of which is of course speculation. It may have been that Hamilton desired to see Muse's companion acquitted, and would not contradict Deleone's testimony accusing Muse. An attack upon Hamilton's credibility may, perhaps, have mitigated the evidence pointing to the guilt of Muse. All of which is, of course, relative at this point. In any event, the defense was not permitted to cross-examine the State's witness to show Hamilton's bad character, or its effect upon his credibility, whatever the object of the cross-examination may have been.
In our view the question was proper and should have been allowed.
The proper question to be put to a witness for the purpose of impeaching the general character of another witness, as approved by this Court in State v. Christian, 44 La.Ann. 950, 11 So. 589 (1892), is whether he would believe him upon his oath. The regular mode is to inquire whether they have the means of knowing the former witness' general character, and whether, from such knowledge, they would believe him on his oath. The proper inquiry is, what is his general character for truth in the place where he resides? and whether, from the witness' knowledge of his general character, he would believe him under oath.
As the Court observed in Paradise v. Insurance Co., 6 La.Ann. 596 (1851):
"It is not to be supposed that jurymen are personally acquainted with the character of all the witnesses that come before them, and, when they are called to find out the truth by means of the testimony presented to them, it is indispensable for the purposes of truth, that they should know how far portions of that testimony are entitled to credence. The inconvenience suggested is a serious one, but the exclusion of necessary information from the jury would be a much greater one."
Proof of character, therefore, whether good or bad, depends upon the general reputation that a man has among his neighbors, and it is undoubtedly a legitimate inquiry wherever the credibility of a witness is sought to be brought into question. State v. Oliver, 247 La. 729, 174 So. 2d 509 (1965).
Having decided that the defense question was proper and denying this mode of questioning by the trial judge was error, the question is then what is the import of this error upon the trial.
"The accused in every instance shall have the right to be confronted with the witnesses against him . . .." This clause of Section 9 of Article I of the Louisiana Constitution of 1921 is implemented by Sections 273 and 280 of Title 15 of the Revised Statutes providing, respectively, that
"The accused shall have the right to be confronted with the witnesses against him and the depositions of witnesses shall not be evidence either for or against him except as provided by law." La.R.S. 15:273.
"When a witness had been intentionally sworn and has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case." La.R.S. 15:280.
The principle is recognized in Article I, Section 16 of the Constitution of 1974 in this clause: "An accused is entitled to confront and and cross-examine the witnesses against him . . .."
As we said in State v. Giordano, 259 La. 155, 249 So.2d 558 (1971);
"The right of confrontation occupies the status of a paramount and fundamental right indispensable to a fair trial. It is a substantial, substantive and valuable right which assures the accused that he shall have the opportunity to be confronted by the witnesses against him and this includes not only the right to attend the trial and hear the witnesses but also the right to cross-examine them at the *923 trial. It is a constitutional right, not a mere privilege."
Our cases have steadfastly recognized the importance of the right of cross-examination. State v. Williams, 250 La. 64, 193 So.2d 787 (1967); State v. Elias, 229 La. 929, 87 So.2d 132 (1956); State v. Angelle, 217 La. 852, 47 So.2d 664 (1950); State v. Nugent, 116 La. 99, 40 So. 581 (1906); State v. McCoy, 109 La. 682, 33 So. 730 (1903); Dubose v. Bosworth, Gunby's Dec. 41 (La.App.1885). See also Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 (1965).
Francis L. Wellman, the distinguished trial lawyer of the New York bar, described the importance of cross-examination in these words:
"If all witnesses had the honesty and intelligence to come forward and scrupulously follow the letter as well as the spirit of the oath, `to tell the truth, the whole truth, and nothing but the truth,' and if all advocates on either side had the necessary experience, combined with honesty and intelligence, and were similarly sworn to develop the whole truth and nothing but the truth, of course there would be no occasion for cross-examination, and the occupation of the cross-examiner would be gone. But as yet no substitute has ever been found for cross-examination as a means of separating truth from falsehood, and of reducing exaggerated statements to their true dimensions." Wellman, The Art of Cross-Examination, p. 5 (4th ed. 1936).
Because the right of confrontation is denied by an improper restriction of cross-examination, the error is substantive and a denial of a constitutional right. As such the error nullifies the verdict and requires a new trial.
We cannot subscribe to the trial judge's opinion that the error was harmless for we do not know what defense counsel may have elicited from the witness, nor its effect upon the jury's determination of the defendant's guilt.
For the reason assigned, the conviction and sentence are set aside and the case is remanded for a new trial.
SANDERS, C.J., dissents and assigns written reasons.
SANDERS, Chief Justice (dissenting).
The State charged Earl Muse with shooting Jerome Hamilton. The record reflects that Hamilton was in a New Orleans barbershop, when he heard shooting on the street. When he walked to the door, he observed a Thunderbird automobile driving down the street. Two individuals, unknown to him, were firing at the automobile. One of the shots struck him below the eye, and he fell. He did not see who shot him.
Hamilton's testimony at the trial was restricted to the above facts. It was a report of an innocent bystander being struck by a stray bullet.
While Deleone, another State witness, was under cross-examination, the defense attempted to attack Hamilton's reputation, apparently for purposes of impeachment.
The witness testified that he had known Hamilton for twenty years, that he saw him occasionally, but that he had never heard his character discussed. Defense counsel then asked the following question: "Do you know Jerome's general reputation in the community?" The State objected to the question, and the trial judge sustained the objection.
Although the ruling is not free from difficulty, I am inclined to believe it was correct for two reasons.
Initially, I note that the question does not specify what kind of general reputation is sought. In Louisiana, the reputation testimony may relate to the witness's general reputation for truth or his general *924 moral character. LSA-R.S. 15:490; State v. Guy, 106 La. 8, 30 So. 268 (1901); State v. Parker, 7 La.Ann. 83 (1892). In my opinion, the question is deficient in failing to specify whether the reputation for truth, general moral character, or both is sought. In jurisdictions, such as Louisiana, where different types of reputation may be tested, it is improper to ask merely if the witness knows the "general reputation." See State v. Tyler, 220 Mo.App. 317, 286 S.W. 408 (1926); 98 C.J.S. Witnesses § 524, p. 451.
Secondly, it is well established that the proof of reputation allowed is not individual opinion, rumor, or impressions gained from personal contact with the witness to be impeached. It is limited to general reputation or report. LSA-R.S. 15:491; State v. Corbin, La., 285 So.2d 234 (1973). Here, the witness had indicated that he had never heard the reputation discussed. Hence, the judge had the right to assume that the question was directed to an improper form of reputation, such as the witness's private opinion.
It is well established that after an impeaching witness has testified that he has not heard the witness's reputation discussed, he can go no further in his testimony. See State v. Warren, 138 La. 361, 70 So. 326 (1915).
Assuming arguendo that the trial judge erred in sustaining the objection, in my opinion it was harmless error. The witness sought to be impeached was no more than an innocent bystander, struck by a stray bullet. Identification of the defendant depended upon the testimony of other persons. The evidence identifying the defendant as the gunman is overwhelming.
Article 921 of the Louisiana Code of Criminal Procedure provides:
"A judgment or ruling shall not be reversed by an appellate court on any ground unless in the opinion of the court after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."
For the reasons assigned, I respectfully dissent.