359 So.2d 99 (1978)
STATE of Louisiana
v.
Billy J. LANDRY.
No. 61087.
Supreme Court of Louisiana.
May 22, 1978.
Rehearing Denied June 15, 1978.
*100 J. Minos Simon, J. Minos Simon, Ltd., Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On December 7, 1973 at approximately 10:20 p.m. a man drove up to a fireworks stand in Scott, Louisiana. He forced the woman attendant, who was then six months pregnant, into his car at gunpoint and drove off to a small cabin-like house. There he raped her. The man then drove the victim back to Scott and released her. The defendant, Billy Landry, was arrested early the next morning. He was thereafter indicted for aggravated rape, tried before a jury and found guilty as charged. He was sentenced to serve twenty years imprisonment at hard labor. On appeal the defendant relies on five arguments on assignments of error for reversal.

Assignments of Error Nos. 1 and 2
Through these assignments the defendant contends that the State improperly used a statement made by the defendant after his arrest for impeachment purposes.
At trial Billy Landry testified in his own defense. According to his testimony, he left his work as manager of a mobile home business on the night of the offense at approximately 8:00 p.m. He went to a nearby store for groceries, then returned home and began preparing his supper. At around 9:00 p.m. he telephoned his wife, who was then living in New Iberia, and talked to her for approximately one hour. He then went to his employer's room and asked him if he wanted to share the supper he had prepared. The employer told the defendant that he had already eaten so the defendant again returned to his room. He changed shoes and jogged approximately two miles to the Anchor Lounge, arriving at approximately 10:15 p.m. He stated that he had two drinks at the lounge before he jogged back home and went to bed.
On cross-examination the prosecuting attorney attempted to impeach defendant's credibility through use of inconsistent statements made by the defendant to a police officer at the time of the arrest.
Defendant first argues that the State violated the mandate of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), by asking the defendant: "You didn't tell him (Deputy Barnett) about the Anchor Lounge. Is that correct?"
Defendant's reliance on Doyle v. Ohio, supra, is misplaced. In that case defendants Doyle and Wood were arrested for selling marijuana to an undercover agent. They were advised of their Miranda rights and apparently invoked those rights after the arrest. At trial the defendants offered an exculpatory version of the events which led to their arrests. In an attempt to impeach their credibility at trial, the prosecutor asked them why they had not offered their explanation to the police officer at the time of the arrest. The United States Supreme Court reversed their convictions, holding:

*101 ". . . the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment.. . ." 426 U.S. at 619, 96 S.Ct. at 2245, 49 L.Ed.2d at 98.
In the present case the prosecutor was not making use of the defendant's silence after arrest. After the defendant was arrested he was advised of his rights, but he chose not to exercise them. Instead, he gave Deputy Barnett a version of his actions on the night of the offense which was inconsistent with that offered at trial. Specifically, according to Barnett's notes, defendant stated that he snacked for supper then retired shortly after 10:00 p. m. the time at which he testified that he was jogging to the Anchor Lounge and having a couple of drinks.
The prosecutor's question at trial was a proper inquiry into the inconsistency between his statements. In addition, the question was proper cross-examination, because on direct examination defense counsel propounded the identical question, and the defendant responded that he had told Deputy Barnett about the trip to Anchor Lounge. The State, armed with Barnett's notes on the defendant's statement, had the right to question this assertion.
Defendant next argues that the trial court erred in allowing the State, on rebuttal, to introduce for impeachment purposes testimony of Barnett about defendant's oral statement. Defendant argued that only the contradictory portion of the statement should be admitted.
The State sought to show that defendant did not mention going to the Anchor Lounge in the statement he gave to Barnett after his arrest. This could have been proved by direct questions to Barnett, or, as the State chose, by having Barnett relate the contents of the brief statement given by defendant, describing his actions of the evening. To the extent that the statement purported to account for defendant's actions of the entire evening, it contradicted his trial testimony.
These assignments are without merit.

Assignment of Error No. 3
Defendant contends that the trial court erred in overruling his objections to certain questions asked by the prosecutor during the cross-examination of a defense witness. The witness was the employer of the defendant and the owner of the car allegedly used by the defendant in the perpetration of the offense. The witness testified that on the night of the rape he had gone to the Tonga Isle Lounge with a friend for a few beers, returning home shortly before 10:00 p. m. He stated that he did not hear his car start after he returned home and that it did not appear to have been moved from the time he arrived home until he was awakened by the investigating officers. On cross-examination the State, in an attempt to attack the credibility of the witness, asked the following questions:
"Q. . . . Do you drink?
A. Yes sir.
Q. Drink what, whiskey, beer?
A. Beer.
Q. Beer, been drinking all your life?
A. Yea.
Q. Yea, okay, what kind of drinker are you?
A. I would say moderate.
Q. Moderate?
A. Yea.
Q. Okay, you drink 6, 7, 8 beers every day?
A. No, no.
Q. Do you drink 6 or 7 beers at a time though?
A. Uh, on occasion, yea.
. . . . . .
Q. Do you drink 6 or 7 beers on occasions?
A. Yes sir.
Q. How old are you now, 60?
A. Yes sir.
Q. How long have you been drinking, since you're how old?
. . . . . .
A. 20, 21, or 22.

*102 Q. So about 40 years.
A. Yea.
Q. Okay, during that period of time, have you drunk to excess on many occasions?
A. On some occasions.
Q. Some occasions, okay, now the night you went to Tonga Isle Lounge, that's by Duson, right? About 7 (seven) or 8 (eight) miles away from your home?
A. Yes sir.
Q. That's the place that has go-go girls in it and things like that?
A. No.
Q. No, did you drink that night sir?
A. Yes sir.
Q. How many beers did you drink?
A. Oh
Q. Was it beer you were drinking?
A. Yes sir.
Q. How many beers did you drink that night?
A. About 4 (four) or 5 (five).
Q. Could it have been 6 (six) or 7 (seven)?
A. I don't think so, because I don't drink fast and I wasn't, I don't think it could have been more than 4 or 5.
Q. But is is (sic) possible.
. . . . . .
Q. But it's possible?
A. Yes sir.
Q. Possible it could of been 6 (six) or 7 (seven)?
A. Yes sir.
Q. How many beers did you drink, how long did it take you to drink them, 15 minutes?
A. Oh, no, about a half hour."
Defendant argues that the examination was improper under R.S. 15:490 and 491 in that it constituted an attack on the general credibility of the witness through particular acts and vices.
R.S. 15:490 and 491 provide, respectively:
"The credibility of a witness may be attacked generally, by showing that his general reputation for truth or for moral character is bad, or it may be attacked only in so far as his credibility in the case on trial is concerned."
"When the general credibility is attacked, the inquiry must be limited to general reputation, and can not go into particular acts, vices or courses of conduct."
These articles proscribe the use of evidence of specific acts or vices to impeach the general credibility of a witness and limit the inquiry to proof of general reputation. They do not, however, prevent the introduction of evidence bearing on the witness' ability to perceive or witness that which he is testifying about. In State v. Luckett, 327 So.2d 365 (La.1976), we stated on rehearing:
". . . defects of capacity, sensory or mental, which would lessen the ability to perceive the facts which the witness purports to have observed, are provable to attack the credibility of the witness, either upon cross-examination or producing other witnesses to prove the defect. Clearly, a defect in capacity may result from the use of drugs or alcohol. Whether a witness was intoxicated, by use of drugs or alcohol, on the occasion respecting which he is called upon to testify goes to his credibility and weight of his evidence and not to his competency. . . ." 327 So.2d at 372.
See also McCormick on Evidence, § 45 at p. 94 (Cleary Ed.1972); 3A Wigmore, Evidence, §§ 931, 933 (Chadbourn rev. 1970); Pugh and McClelland, Work of Appellate Courts, Evidence, 37 La.L.Rev. 585 (1977); Comment, Impeachment, 21 Loy.L.Rev. 346 (1975).
The witness was properly interrogated as to the amount of alcohol he had consumed on the night of the offense and the effect it had upon him.
Evidence of habitual intemperance, however, should not be admissible because, in most cases, it bears little relevance to the credibility of the witness and falls within the proscription of R.S. 15:491 against impeachment of the general credibility through particular acts and vices. This rule has been adopted by the majority of jurisdictions.
*103 McCormick, supra; Wigmore, supra; see Annot. 8 A.L.R.3d 749 for a compilation of jurisdictions accepting and rejecting this rule. The defendant argues that the State's cross-examination violated this rule while the State argues that all of the questions were directed toward the witness' capacity to perceive on the night of the offense.
A reading of the transcript leads us to conclude that the State went beyond evidence relating to the witness' capacity on the evening of the offense and entered the prohibited field of impeachment of the general credibility through particular acts and vices. R.S. 15:491. The error does not, however, require a reversal of the conviction. The witness' responses to the State's questions did not indicate his habitual intemperance but rather showed only that he was a moderate drinker. No prejudice could have resulted from this limited inquiry. C.Cr.P. 921; State v. James, 305 So.2d 514 (La.1974).
This assignment is without merit.

Assignment of Error No. 5
In this assignment the defendant contends that the trial court erred in allowing the State to elicit opinion evidence from a witness not qualified as an expert and evidence of a witness' impressions, both in contravention of R.S. 15:463. The objection occurred during the redirect examination of one of the investigating officers, Deputy Boutte. The prosecutor asked Boutte why he did not try to lift fingerprints from certain objects during his investigation and why his investigation was terminated after the defendant was arrested.
While the questions might have been calculated to elicit opinion evidence, they were admissible; they were asked in response to similar questions posed by defense counsel on cross-examination. The defendant now complains of evidence introduced in response to issues raised by the defense.
This assignment is without merit.

Assignment of Error No. 6
In the presentation of his case, the defendant called a local attorney as a character witness for the defendant. The following occurred:
"Q. Have you had occasion in force of your activities have you had occasion to uh hear conversations of people talk about Mr. Landry, to know what other people think of Mr. Landry?
A. Yes, I have.
Q. As a result of what you have heard the citizens of the community in which you reside and to which you reside speak about Mr. Landry, have you gained knowledge of what his reputation is for being a law-abiding, honest, person and a truthful person?
A. I would say that I have.
Q. Would you inform the ladies and gentlemen of the jury what is Mr. Landry's reputation for being an honest and truthful person and for being a peaceful and law-abiding person?
A. I would say that he enjoys such a reputation in the community.
Q. Now, well, you believe Mr. Landry under oath?"
The State's objection to the last question was sustained by the trial court. The defendant assigns this ruling as error, arguing that his examination of the witness was improperly restricted.
R.S. 15:479 and 480 provide the following rules governing the admissibility of character evidence:
"Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not upon what particular persons think of him." R.S. 15:479.
"Evidence of the good character of accused is always admissible in his behalf, and must be considered in connection with and as a part of the whole testimony and due weight be given it, but it can not destroy conclusive evidence of guilt; and such evidence must be restricted to showing character as to such moral qualities as have pertinence to the crime with which *104 he is charged." R.S. 15:480. (Emphasis added).
The question posed by defense counsel went beyond the scope of permissible character evidence, in that it was referred to moral qualities which had no relation to the offense with which the defendant was charged.
The question about the believability of the defendant was designed to be corroborative and corroborative testimony can be introduced only after credibility of the witness has been attacked. R.S. 15:484, 485. While the question would have been permissible for impeachment purposes (R.S. 15:490, 491; State v. Frentz, 354 So.2d 1007 (La.1978); State v. Muse, 319 So.2d 920 (La.1975)) it was properly excluded by the trial court as improper character evidence as used in the present case.

Assignment of Error No. 7
Defendant contends in this assignment that the trial court erred "in permitting the prosecution to propound multiple leading questions and in permitting the introduction of a large volume of hearsay evidence and in . . . refusing to rule on defense objections . . ."
We have examined the record, particularly those parts designated by the defendant, and find no reversible error. Accordingly, this assignment is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.