LEMMON, Justice.
This case involves a conviction of aggravated crime against nature allegedly committed against an eight-year old girl. We granted certiorari to determine whether a new trial is required because the trial judge refused to allow defense counsel to impeach the mother of the alleged victim with a prior inconsistent statement. We conclude that the exclusion of impeaching evidence which tended to show a basis for bias on the part of the child’s primary authority figure warrants the granting of a new trial.
Defendant was charged with committing the crime against Kathryn Rutley between November 15 and 17, 1982. Sonya Rutley, the mother of the alleged victim, had lived with defendant for at least one month in 1973 or 1974. In September, 1974, Sonya Rutley gave birth to Kathryn.[1] On November 18,1974, defendant married his present wife. During the ensuing years Sonya Rutley and her daughter maintained a friendly relationship with defendant and his wife and occasionally visited their trailer home, where Kathryn played with Tammy Smith, a young girl whom defendant and his wife were raising.
*1186 Information about the alleged crime came to light in March, 1983, after defendant and Sonya Rutley were involved in a heated argument at the restaurant where Rutley worked. During the argument, defendant threw a sugar bowl at her, breaking her hand. Rutley immediately filed criminal charges against defendant.
Later the same evening, according to Rutley, Kathryn told her that defendant had also hurt her in a different way and described an incident several months earlier when defendant had forced her to have oral sex with him. Sonya Rutley then reported the incident, and she and her daughter gave statements to the police.
The trial was a pure credibility contest between defendant and the child, since there was no physical or medical evidence to support the occurrence of the alleged incident. Kathryn Rutley testified that the incident occurred in mid-November, 1982.[2] While she was visiting at defendant’s trailer, defendant’s wife and Tammy left to purchase soft drinks. She went into the bedroom where defendant told her to remove her clothes and to get into bed with him. After defendant touched her between the legs with his tongue, he “made [her] suck his thing”. Later, after defendant “put his thing” near her genital area, something that looked like “hand lotion” came from the “end of his thing”. Because defendant warned her to keep the incident secret, she was afraid to tell her mother until she learned of the injury inflicted on her mother by defendant.
The prosecutor rested after presenting Kathryn and a witness who established defendant’s age. The defense then called Sonya Rutley to the stand. Rutley testified that Kathryn had visited the trailer around November 15 to 17 to listen to music played by defendant’s small band. When Rutley arrived at the trailer to check on Kathryn, Pinkey Savoie, another member of the band, was also there. She and Kathryn left when Kathryn told her she did not want to spend the night. According to Rutley, the argument with defendant at the restaurant several months later began when defendant asked her to bring Kathryn to visit Tammy and she informed defendant that Kathryn did not want to visit there anymore.
Rutley admitted that she had been romantically involved with defendant in the past. She further admitted that she had gone trawling with him in November, 1982 (the month in which the crime allegedly occurred), but denied having sex with him on that trawling trip. Counsel then asked if she had ever told anyone she had sex with defendant on the November trawling trip, and she replied, “Not that I can recall”. When counsel attempted to question her about a signed statement, the prosecutor objected that defense counsel was attempting to impeach his own witness without establishing she was a hostile witness. The judge sustained the objection and refused to allow counsel to question Rutley about the statement.
The defense then called the police officer who had interviewed the child after her mother reported the incident. In the statement the child said that the incident had occurred on a Thursday night.
Defendant's wife testified that Kathryn Rutley visited Tammy at their trailer from time to time. She recalled that Kathryn had come to the trailer on November 18, 1982 (a Thursday), because defendant, Sa-voie and another member of their band had played music that night for the celebration of her wedding anniversary. Kathryn had planned to spend the night, but cried to go home when her mother, who had been there all evening, started to leave. Defendant’s wife specifically denied that she had left the trailer that evening, and she further testified that she didn’t “see how” defendant and Kathryn could have been alone because “[t]here were so many people there”. She added that Sonya Rutley and the child were the first to leave that evening.
Defendant denied any touching or sexual advances toward the child at any time. As to the dates set out in the indictment (No *1187 vember 15 to 17), he stated that he was a commercial shrimper and was on his boat trawling on those nights, but did not work on November 18 because it was his anniversary. He added that he and his band played music and had refreshments at his trailer on the night of his anniversary. He admitted a sexual relationship with Sonya Rutley and stated that they had sex for the last time on his trawling boat the day after his anniversary party. He also admitted throwing a sugar bowl at Sonya Rutley, but asserted that she had slapped him. He further theorized that Rutley had influenced the young child to fabricate the incident or to distort reality because of her animosity toward him after the sugar bowl incident.
On appeal following the conviction, one of the assignments of error was the trial court’s refusal to permit impeachment of Sonya Rutley with a prior inconsistent statement. A divided intermediate court affirmed the conviction. 499 So.2d 1220. The majority conceded that Sonya Rutley was indeed a hostile witness and that the trial judge had erred in denying counsel’s entitlement to impeach her by means of a prior contradictory statement under La. R.S. 15:487. However, the majority concluded that evidence impeaching Rutley on whether she and defendant had sexual relations around the time of the alleged offense concerned a collateral matter and was not competent under La.R.S. 15:494, which prohibits impeaching any witness as to collateral facts or irrelevant matters. We granted defendant’s application to review these rulings. 503 So.2d 486.
A party is generally not permitted to impeach his own witness. However, if the witness shows hostility toward the calling party, impeachment is permitted, but only by means of a prior contradictory statement.[3] La.R.S. 15:487. Here, the mother of the alleged victim who reported the child’s story to the police was clearly a hostile witness, and the court of appeal correctly ruled that impeachment by means of a prior inconsistent statement was permissible.
The rule against impeachment on collateral facts, enacted in Louisiana in La. R.S. 15:494, applies to all witnesses and not just those witnesses called by the impeaching party. Because any human being may be mistaken as to a particular fact, a cross-examiner should not be permitted to test a witness on facts extraneous to the litigation and thereby cause the waste of valuable court time and the risk of confusing of the jury. Impeachment by extrinsic evidence is therefore generally limited to facts which would be admissible for any purpose independent of the showing of self-contradiction. Accordingly, impeachment is permitted on facts which are relevant to the substantive issues in the case and facts which discredit the witness as to bias, interest, skill, knowledge and the like. See generally E. Cleary, McCormick on Evidence § 36 (3rd ed. 1984); 3A Wigmore on Evidence § 1020-22 (Chadbourne rev. 1970).
Here, the essence of the defense was that Sonya Rutley had a continuing romantic relationship with defendant and had reported the crime in retaliation either for being rebuffed in this relationship or for the injury inflicted by defendant following their violent argument. During the trial, Rutley admitted she and defendant had a previous sexual relationship, and there was even a suggestion that Rutley’s daughter may have been born of that relationship. Rutley further admitted going with defendant on his trawling boat around the time of the alleged crime, but denied the one fact which would have proved the continuation of the sexual relationship and would have suggested an explanation for the heated argument on the day she reported the alleged incident to the police.
*1188 Proof of continuation of the sexual relationship was admissible under these circumstances to show a basis for bias, especially when the evidence is considered in light of the fact that Rutley’s next encounter with defendant ended in a violent argument, followed immediately by Rutley’s filing a criminal charge of battery and then reporting defendant's sexual advance toward her child. Had Rutley been the prosecuting witness, certainly this evidence bearing on bias would have been admissible. Since Rutley, as mother and sole custodian of the eight-year old child, was in a position to exercise substantial influence over the child’s recollection of real and of imagined experiences in preparation for a trial to be decided entirely on the child’s credibility, Rutley virtually occupied the same position as a prosecuting witness.[4]
Defense counsel’s attempt under these circumstances to show the witness’ bias by evidence of the continuation and the ultimate termination of a sexual relationship with defendant can hardly be termed impeachment on collateral facts. This evidence involved more than a trivial detail of time, place or circumstance unimportant to the resolution of the ultimate credibility issue. Moreover, allowing the evidence would not have conflicted with La.R.S. 15:494’s purpose of preventing the waste of time and the risk of jury confusion. Defense counsel should have been permitted to impeach Rutley on the fact which tended to show her bias and to undermine the credibility of her denial of coaching the witness. Defendant’s loss of this opportunity for impeachment of an important witness in the ultimate credibility determination requires reversal of the conviction.
Accordingly, the conviction and sentence are reversed, and the case is remanded to the district court for further proceedings.
MARCUS, J., concurs and assigns reasons.
WATSON, J., dissents.

. According to defendant, Sonya Rutley told him Kathryn was his daughter.

. Actually, the witness related the incident in time with another event which, according to other witnesses, occurred around November 15 to 17, 1982.

. The general rule prohibiting the impeachment of a party’s own witness has been limited by statute under present Louisiana law, but has been abandoned in several jurisdictions and in the federal system. E. Cleary, McCormick on Evidence § 38 (3rd ed. 1984); Fed.R.Evid. 607. See proposed Louisiana Code of Evidence Arti-ele 607. The problem is that a party rarely has any choice in selecting witnesses to a particular fact, and absolute denial of the right of impeachment to the calling party leaves the witness free to lie without fear of attack by either the calling party or the adverse party.

. Of course, we do not suggest that the child, as a matter of fact, imagined the incident because of undue influence exerted by her mother. The defense, however, does argue that the biased mother caused the child to imagine or to exaggerate the incident, and that determination is one for the jury after both sides had been allowed to present all admissible evidence.