591 So.2d 686 (1991)
STATE of Louisiana
v.
Raymond BAIRNSFATHER.
No. 91-K-0739.
Supreme Court of Louisiana.
December 2, 1991.
Rehearing Denied January 9, 1992.
Dwight Doskey, Orleans Indigent Defender Program, for applicant.
William J. Guste, Atty. Gen., Harry F. Connick, Dist. Atty., Charmagne Ann Padua, Asst. Dist. Atty., for respondent.
COLE, Justice.
We determine, in this criminal case, whether the trial court erred in refusing to allow the defendant to impeach the credibility of the nine-year-old victim: (1) by showing her bad reputation for truth and veracity; and, (2) by proving her prior inconsistent statements. We believe the trial court erred in excluding the impeachment evidence. Under the circumstances, we do not find the errors harmless beyond a reasonable doubt, and we conclude they deprived the defendant of a fair trial. Consequently, we reverse the judgment of the court of *687 appeal and remand the case to the district court for a new trial.

I.
Defendant Raymond Bairnsfather was charged by bill of information with aggravated crime against nature upon his niece, K.W., in violation of La.Rev.Stat. § 14:89.1. A jury of 12, by a 10-2 vote, convicted him of the lesser offense of crime against nature.[1] Bairnsfather was sentenced to a maximum five-year prison term at hard labor.
At the time of the crime, K.W. was eight years old. She lived with her mother, M.W., a younger brother, and her mother's boyfriend, G.D. During the latter part of 1988, Bairnsfather, K.W.'s uncle, moved in with the family. Both M.W. and G.D. worked at a theater; they arranged for defendant to work at a sister theater closer to their home. Defendant worked on a different schedule from M.W. and G.D. and was frequently left to supervise K.W. and her brother.
On the day of the crime, G.D. brought K.W. and her brother to the theater where defendant was employed. Defendant left K.W.'s brother at the theater to watch a film and took K.W. to a fast food outlet for lunch. Defendant and K.W. then went home. K.W. testified that while she and defendant were watching television he told her to get on top of him. He then pulled down her panties and began rubbing his "private part" against her "private part." She testified that "white stuff" came out of defendant's "private part." Defendant then cleaned himself and K.W. Defendant next told K.W. to put his "private part" in her mouth. She complied. She did not tell anyone what happened because she was afraid she would "get into trouble."
About a month later, when K.W.'s grades and behavior began to deteriorate, G.D. questioned her. Ultimately, she related what had occurred with her uncle. G.D. told M.W., who called a child protection hotline, through which an appointment was made with a social worker. The social worker, in turn, arranged an appointment with the police.
K.W. was brought to Charity Hospital, where she was examined by Dr. Kurt Denninghoff. No physical signs of sexual abuse were found, and all tests proved negative. Denninghoff testified, however, that K.W. was "remarkably upset, frightened, moreso [sic] than I had noticed with other children, ... I've never had a child respond to an examination this way who had not been violated, and I have examined thousands of children."
Bairnsfather was arrested. He gave a taped statement, a portion of which was played at trial, in which he denied K.W.'s allegations and accused her of lying. The jury, however, found Bairnsfather guilty of the responsive verdict of crime against nature. Bairnsfather appealed the conviction. A divided panel of the Court of Appeal, Fourth Circuit, affirmed. State v. Bairnsfather, 576 So.2d 580 (La.App. 4th Cir. 1991). We granted writs, State v. Bairnsfather, 581 So.2d 668 (La.1991), and now reverse.

II.
Bairnsfather initially argues, as he did in the court of appeal, that the trial judge erred by refusing to allow defense counsel to question Dale and Joann Konig, K.W.'s cousins, regarding K.W.'s reputation for truthfulness and veracity. Defendant's theory of the case was that K.W. was lying. When she took the stand, she admitted never having liked the defendant. She denied she had lied repeatedly to Cindy Marin, her next door neighbor, about unrelated crimes or that she had ever told Marin defendant had not molested her.
After the state rested, defense counsel put the Konigs on the stand. They had taken care of K.W. for a while, but eventually declined to continue taking care of her when K.W. allegedly began lying and making unfounded accusations against *688 their sons. Defense counsel attempted to establish the predicate by asking whether he had had occasion to discuss K.W.'s reputation with other members of her family or the community. The trial judge interrupted:
BY THE COURT: Are you talking about a child's reputation?
BY MR. RUSKIN: Yes, Ma'am.
BY THE COURT: No, sir. No, sir, that's not going to be permissible.
BY MR. RUSKIN: Reputation, community reputation?
BY THE COURT: No, sir, that's not going to be rep
BY MR. RUSKIN: A specific area.
BY THE COURT: No, sir, that is not going to be permissible. This jury determines what they think about the credibility of the witness. If you want to put on reputation testimony about the defendant, that's fine.
A similar exchange occurred minutes later when Joann Konig was on the stand.
The trial court's ruling was erroneous. The victim had already testified, and defense counsel had the right to attack her credibility through character evidence provided the proper predicate was laid. La. Code Evid. arts. 607(B), (D)(2), 608(A). No exception is made because of the witness's age or maturity. The court of appeal acknowledged the error but chose to emphasize defense counsel's attempts to inquire into specific acts of the victim and concluded that "the testimony sought by defendant would not establish a proper foundation to attack the victim's reputation for truthfulness."Bairnsfather, 576 So.2d at 585. This conclusion is not supported by the record. Moreover, it ignores defense counsel's proper attempts to inquire as to the victim's community reputation. The court is correct in noting that a character witness "cannot merely relay incidents he or she had with the witness whose credibility is being attacked," id., but the Konigs, if the defense inquiry had not been improperly curtailed, may have been able to substantiate their ability to express an opinion. The trial court's incorrect statement of the law effectively denied the defendant the right to attack the victim's general reputation for truthfulness. The premise of the trial court's ruling seems to be that a child witness cannot tell a lie. Defense counsel's attempt to establish a foundation regarding the victim's truthfulness was thwarted by the trial court.
While it is true defense counsel, when examining Mrs. Konig, did not satisfy the requirement that reputation evidence of character may refer only to character for truthfulness or untruthfulness, his dialogue with the judge during the examination of Mr. Konig distinguishes this case from both State v. Edmond, 399 So.2d 187 (La.1981), and State v. Burrell, 561 So.2d 692 (La.1990), cert. denied, 498 U.S. ___, 111 S.Ct. 799, 112 L.Ed.2d 861 (1991). In those cases we held the trial court did not err in excluding, as too broad, questions such as whether the witness knew the general reputation of the victim in the community or whether a witness's reputation in the community was good or bad.
That counsel initially began delving in an improper manner is insufficient for the court of appeal's holding that he would "never have tumbled" into the correct manner of impeaching the witness. Defense counsel's references to K.W.'s "credibility" and "ability to not be truthful" in his proffer lead us to believe he would have laid the proper foundation if the trial judge had not erroneously informed him that only his client's reputation could be raised. Considering the importance of the victim's credibility in this case, where her testimony was the sole substantive evidence against the defendant, there being no physical evidence to corroborate her allegations, we hold that the defendant was prevented from presenting a defense by the trial court's refusal to allow him to impeach the victim's general credibility. Cf. State v. Muse, 319 So.2d 920, 923 (La.1975) (improper restriction of impeachment evidence on cross-examination denies defendant his constitutional right of confrontation).[2]

*689 III.
Bairnsfather next contends the trial judge improperly prevented him from bringing to light a prior inconsistent statement allegedly made by K.W. Defense counsel had asked her whether she had told Cindy Marin, her neighbor, approximately two weeks prior to trial, that the defendant had never molested her. She denied having made the statement. When Marin took the stand, counsel wanted to introduce the prior inconsistent statement and the circumstances under which it was made.
EXAMINATION BY MR. RUSKIN:
Q: Now, did thisdid you discuss with her the particular facts about this case?
A: Yes, I did. I asked her what happened.
Q: Was she forthdid she tell you what happened from
BY MR. FOSTER:
Your Honor, I'm going to object. This is going to get into hearsay.
BY MR. RUSKIN:
No, Your Honor, this is not just hearsay.
BY THE COURT:
Just one second, Mr. Ruskin. Ask the question.
EXAMINATION BY MR. RUSKIN:
Q: Did she ever tell you whether or not anything had happened?
A: She had come to my door and twicebecause I had made it a point to
BY MR. FOSTER:
Your Honor, I'm going to object if she's going to say what she said.
BY THE COURT:
We have not yet hearddon't tell us what she said or anything. She came to your door and what?
BY THE WITNESS:
She said, "He didn't do me anything. He didn't do me anything."
BY MR. FOSTER:
Your Honor, that's hearsay and I object to the hearsay nature.
BY MR. RUSKIN:
Your Honor, this isthis is
BY THE COURT:
You ask another question, Mr. Ruskin. Don't elicit hearsay any more now.
BY MR. RUSKIN:
Your Honor, this is not just hearsay. This is something
BY THE COURT:
I justI permitted it to go in. Ask another question.
K.W.'s attention had previously been directed to the conversations with Marin, and she clearly denied exculpating her uncle. This was the predicate required by La.Code Evid. art. 613. The statement defendant sought to elicit was not hearsay because it was testimony regarding a prior inconsistent statement not offered to prove the truth of the matters asserted therein but to impeach the victim by showing she had made the previous statement. See La.Code Evid. arts. 607(D)(2), 801(C).
The court of appeal held that the witness's blurting out of the prior inconsistent statement made the assignment of error moot. We disagree. When the judge admonished defense counsel not to introduce any more hearsay, despite the fact she did not instruct the jury to disregard the evidence, she limited the further presentation of evidence and, in combination with other instructions, effectively told the jury to disregard that evidence.
We cannot say the court's error, especially when combined with the error previously discussed, is harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. West, 568 So.2d 1019 (La.1990); State v. Gibson, 391 So.2d 421 (La.1980). As previously noted, the state's case against Bairnsfather depended entirely upon the victim's credibility. There was no extensive testimony of a "rape victim" syndrome to back up her testimony. There were no physical findings by the doctors to confirm any sexual *690 abuse. The entire case hinged upon the jury's perception of K.W.'s veracity. In-depth testimony regarding K.W.'s exculpatory statements may have had a significant impact on the jury's deliberations, but the trial court compelled the defendant to abandon a permissible line of questioning. To this extent, the trial court's erroneous rulings effectively bolstered K.W.'s credibility in the eyes of the jury and thus contributed to the verdict. No reviewing court could declare them harmless beyond a reasonable doubt.

IV.
For the foregoing reasons, we reverse the judgment of the court of appeal and remand the case to the district court for a new trial.
REVERSED AND REMANDED.
NOTES
[1] Defendant was also charged in a separate bill of information with two counts of molestation of a juvenile. He entered a guilty plea to both counts after being found guilty in the present case.
[2] Given the result we reach, we find it unnecessary to address defendant's assertion, made for the first time in a footnote, that the trial judge's ruling could be interpreted as an impermissible comment upon the evidence. He contends the expression that the prosecution's main witness cannot have her credibility impeached may be viewed as designating that testimony as truthful, in violation of the constitutional policy making the jury the factfinder.