I,PER CURIAM: *
Louisiana has long sanctioned the use of prior inconsistent statements to impeach the general credibility of a witness, subject to the rule that such statements are admissible only for their impeachment value and not as substantive evidence, see State v. Cousin, 96-2973, p. 8 (La.4/14/98), 710 So.2d 1065, 1069, and subject also to the authority of a trial judge to exclude such evidence when its probative value “on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.” La.C.E. art. 607(D)(2); Cousin, 96-2973 at 11, 710 So.2d at 1071 (“The right to use the prior statement depends upon the probative value of the statement as to the credibility of the witness’ in-court testimony, as measure against the prejudicial impact that potentially may result from the jury’s improper use of the evidence.”) (citation omitted).
Iin the present case, the court of appeal held that the trial court abused its discretion by precluding defense counsel from impeaching the victim with her prior testimony at respondent’s bail hearing and that the error was not harmless in a case which turned solely on the uncorroborated testimony of the victim and in which the jury returned a lesser verdict of attempted aggravated rape, although the victim’s testimony that respondent had penetrated her sexually would have sustained a verdict on the charged offense of aggravated rape, La.R.S. 14:42. State v. Jackson, 99-01711 (La.App. 3rd Cir.5/3/00), 775 So.2d 710 (Doucet, C.J., dissenting) (unpub’d). We granted the state’s application to reverse that decision because the trial court’s ruling did not, in fact, unduly restrict defense counsel’s cross-examination of the victim as to circumstances bearing directly on the credibility of her trial testimony.
The victim testified at trial that on the morning of August 9, 1997, respondent raped her in a motel room she had shared with her boyfriend, a commercial fisherman, in Cameron, Louisiana. Respondent, a sometime friend, had knocked on the door looking for the boyfriend, who had left for work earlier that morning, and then asked to use the bathroom. He emerged from the bathroom with a condom on his erect penis, informed the victim, “Well, you’re fixing to give me what I want,” threw the condom wrapper on one of the beds in the room, then forced her down on a bed, choked her with both hands, and raped her. After respondent left the victim with a parting threat that he would kill her if she reported the crime, she showered and went to the room next door where she told two friends what had happened. They reported the incident to the police, who transported the victim to the hospital after retrieving the condom wrapper from the bed in the motel room. Dr. Richard Sanders who conducted a pel- *856 vie examination of the |3victim found no evidence of sexual intercourse, forcible or not, although he did notice an abrasion and bruise on the victim’s neck. Apart from this minimal corroboration, the state’s case thus rested solely on the victim’s testimony. Respondent did not testify in his own behalf but called several witnesses to establish that he was elsewhere at the time of the offense.
Defense counsel’s cross-examination of the victim secured her admission that she had used marijuana on prior occasions, although she denied she had smoked marijuana on the morning of the offense or on the previous evening. Counsel then showed her a transcript of testimony she had given at respondent’s bail hearing and specifically directed her attention to an exchange in which he had asked about her prior use of drugs:
Q: You’ll admit that under oath I asked you if you’d ever used any drugs or illegal substances, and your answer under oath was what?
A. When was this? I mean, I didn’t use them that night or that morning.
Q. I’ll ask you to read out loud for the jury-
At this point, the state interrupted with an objection, and after a bench conference not transcribed for the record, defense counsel resumed his cross-examination by turning to other matters. Jurors therefore never heard the victim read aloud from the transcript of the bail hearing in which she denied using drugs or medication on the morning of the offense, or using any drugs or illegal substances, specifically cocaine, “in the past.”
Although the bench conference was not recorded, at the close of evidence and before the arguments of counsel, the trial court permitted defense counsel to place on the record his previously reserved objection to the court’s ruling which had sustained the state’s objection to the impeachment of the victim with her testimony at the bail hearing and to the introduction of a transcript of that Dproceeding. Counsel thereby preserved the issue for appellate review, La.C.Cr.P. art. 841, and in support of its conclusion that the trial court had committed reversible error, the court of appeal relied on this Court’s decision in State v. Bairnsfather, 591 So.2d 686 (La.1992), another case of sexual assault in which the victim’s testimony constituted the only evidence against the defendant and in which the trial court prevented defense counsel from exploring a prior inconsistent statement made by the victim. In Bairnsfather, the disputed statement, that the defendant had not assaulted her, directly contradicted the victim’s trial testimony in which she described specific sex acts initiated by the defendant. This Court found that the trial court had improperly curtailed cross-examination of the victim and that the error was not harmless because “[i]n-depth testimony regarding [the victim’s] exculpatory statements may have had a significant impact on the jury’s deliberations, but the trial court compelled the defendant to abandon a permissible line of questioning.” Bairnsfather, 591 So.2d at 690.
In the present case the victim’s prior inconsistent statement did not exculpate respondent or contradict her in-court testimony regarding the sexual assault. Moreover, the trial court’s ruling did not force the defense to abandon a proper line of inquiry. A party may cross-examine a witness “concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.” La. C.E. art. 607(C). The trial court therefore correctly permitted defense counsel to question the victim as to any drug use at the time of the offense, a matter about which counsel could have introduced ex *857 trinsic evidence to show the victim’s lack of capacity to give an accurate and reliable account of the incident. La.C.E. art. 607(D)(1); State ex rel. Nicholas v. State, 520 So.2d 377, 380 (La.1988) (“One of the main lines of attack upon the credibility of a witness is an attack by showing a | ^defect of capacity in the witness to observe, remember or recount the matters testified about.”). However, as to counsel’s broader inquiry into the victim’s general use of drugs, in most cases, “evidence of habitual intemperance ... bears little relevance to the credibility of the witness and falls within the proscription ... against impeachment of the general credibility through particular acts and vices.” State v. Landry, 359 So.2d 99, 102 (La.1978); see also State v. Toups, 546 So.2d 549, 551-52 (La.App. 1st Cir.1989) (evidence of substance abuse by victim’s mother in presence of the victim properly excluded as irrelevant to issue of mother’s credibility); 1 McCormick on Evidence, § 44, pp. 178-79 (5th ed., John W. Strong, ed., 1999) (Though “many decisions allow [drug addiction] to be shown to impeach, even without evidence that in the particular case it affected truth-telling .... more courts exclude it, absent a showing of a specific effect on the witness’s veracity.... It can scarcely be contended that there is sufficient scientific consensus to warrant judicial notice that addiction in and of itself usually affects credibility.”) (footnotes omitted). As Landry indicates, the majority rule barring inquiry into a witness’s prior use of alcohol or drugs represents a specific application of the general rule that “particular acts, vices, or course of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime....” La.C.E. art. 608(B).' The court of appeal conceded as much when it observed that in the present case, unlike Bairnsfather, the content of the victim’s statements “regarding drug use had no apparent relevance to the case at hand.” Jackson, 99-1711 at 4. Nevertheless, the court concluded that, as in Baimsfather, “the relevance [of the statement] was the bearing upon the victim’s veracity.” Id. However, this Court has long held that a witness may not be cross-examined as to a | ¿fact which is collateral or irrelevant to the issue at hand merely for the purpose of contradiction or impeachment. State v. Vessell, 450 So.2d 938 (La.1984) (citing former La.R.S. 15:494); State v. Cappo, 345 So.2d 443, 444 (La.1977); State v. Martin, 310 So.2d 544, 546 (La.1975); see La.C.E. Art. 607(C), Official Cmt. (g) (“Paragraph C, although new, is not intended substantially to change Louisiana law.... The most general limitation which focused on relevancy was contained in former R.S. 15:494, which prohibited attacks on credibility ‘as to collateral facts or irrelevant matters.’ ”). The rule against impeachment as to collateral matters “is designed to avoid unnecessarily prolonging trials and confusing the issues by extended inquiries into extraneous matters.” Cappo, 345 So.2d at 444 (citations omitted). As Baimsfather plainly illustrates, the subject matter of impeachment must have relevance independent of its capacity to undermine the witness’s credibility by the fact of contradiction alone.
In the present case, the trial court need not have allowed cross-examination of the victim as to any drug use on any other occasion but the morning or night before the charged sexual assault took place. Having allowed that examination, the trial court was not thereafter precluded from exercising its discretion to preclude counsel from stepping even farther afield by attempting to impeach the victim with her prior statements as to that collateral matter. The trial court acted well within its *858 discretion under La.C.E. art. 607(D)(2) when it concluded that the probative value of the victim’s self-contradiction under oath about her drug use generally was outweighed by the risk of diverting the jury’s attention and confusing the issues.
Accordingly, we do not find a substantial denial of respondent’s right to cross-examine the victim as to any matter having a reasonable tendency to disprove the truthfulness or accuracy of her testimony. Whether the inquiry was proper or |7not, jurors had before them the victim’s admission that she used drugs and could draw whatever inferences from that evidence they chose in assessing the credibility of her trial testimony. The decision below is therefore reversed, respondent’s conviction and sentence are reinstated, and this case is remanded to the court of appeal for consideration of respondent’s remaining assignments of error pretermitted on original appeal.
JUDGMENT REVERSED; CASE REMANDED TO THE COURT OF APPEAL.

 Retired Judge Robert L. Lobrano, assigned as justice pro tempore, participating in the decision.