STATE OF LOUISIANA      *      NO. 2021-KA-0409

VERSUS      *

     COURT OF APPEAL

ISSA L. LAMIZANA JR.      *

     FOURTH CIRCUIT

     *

     STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 514-483, SECTION "J"
Honorable Darryl A. Derbigny, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rosemary Ledet, Judge
Sandra Cabrina Jenkins)

LOBRANO, J., CONCURS IN THE RESULT

**ON REMAND**

Jason Rogers Williams
DISTRICT ATTORNEY, ORLEANS PARISH
David B. LeBlanc
ASSISTANT DISTRICT ATTORNEY
Appeals Division
619 S White Street
New Orleans, LA 70119

     COUNSEL FOR APPELLEE


Sherry Watters
LOUISIANA APPELLATE PROJECT
P. O. Box 58769
New Orleans, LA 70158

     COUNSEL FOR APPELLANT

     **CONVICTIONS AND SENTENCES AFFIRMED**
     **July 23, 2024**

This is the third appeal in this criminal case by Defendant—Issa Lamizana. Mr. Lamizana was convicted in January 2016 of two counts of aggravated rape. La. R.S. 14:42.[1] The victims were his two stepchildren—E.T.1 (step-daughter) and E.T.2 (step-son).[2] The district court sentenced Mr. Lamizana to two concurrent terms of life imprisonment without parole eligibility.

In Mr. Lamizana's first appeal, this Court reversed the convictions and sentences, and remanded for a new trial. We did so based on our finding that the district court erred in quashing the subpoena of a Department of Children and Family Services ("DCFS") investigator—Monique Hayes[3]—and in refusing to allow the defense to call Ms. Hayes as a witness at trial. *State v. Lamizana*, 16-1017 (La. App. 4 Cir. 5/31/17), 222 So.3d 58 ("*Lamizana One*"). But, the

---

[1] At the time of the offense, the name of the crime was "aggravated rape." La. R.S. 14:42 was amended by Acts 2015, Nos. 184 and 256, to change "aggravated rape" to "first degree rape." No substantive changes were made to La. R.S. 14:42(A)(4).

[2] Pursuant to La. R.S. 46:1844(W), the juvenile victims are referred to only by their initials—E.T.1 and E.T.2; for consistency sake, we use the same initials as used in this Court's prior opinions in this matter.

[3] Ms. Hayes was the first person to interview one of the victims, E.T.1, and her mother, who was the first reporter.

Louisiana Supreme Court reversed and remanded to the district court to conduct an evidentiary hearing at which Ms. Hayes could be called to testify and the parties could present additional evidence pertinent to the district court's ruling. *State v. Lamizana*, 17-1490, p. 2 (La. 1/30/19), 263 So.3d 872, 873. The Supreme Court reserved all appeal rights, instructing that "[a]fter the district court conducts the evidentiary hearing, defendant can again appeal his convictions and sentences." *Id.*

Thereafter, three events occurred. First, an evidentiary hearing was held on remand, in February 2020, to take Ms. Hayes' testimony. At that hearing, Ms. Hayes testified and two DCFS reports were introduced—a seven-page report and a thirteen-page report. Although the seven-page report was introduced at trial, the thirteen-page report was not.

Second, two months later, in April 2020, the United States Supreme Court decided in *Ramos v. Louisiana*, 590 U.S. 83, 140 S.Ct. 1390, 206 L.Ed.2d 583 (2020), that the Sixth Amendment right to a jury trial, as incorporated against the States by way of the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense.

Third, the following year, in November 2021, the district court issued its ruling regarding the outcome of the evidentiary hearing at which Ms. Hayes testified and the DCFS reports were introduced. The district court's ruling was simply that "[t]o the extent that any ruling remains outstanding with respect to this matter, the [c]ourt hereby accepts the testimony of Ms. Hayes as well as the reports

generated by Ms. Hayes into evidence in accord with the Order of the Supreme Court of Louisiana."

Following those three events, Mr. Lamizana filed a second appeal, assigning six errors.[4] In *State v. Lamizana*, 21-0254 (La. App. 4 Cir. 2/18/22), 336 So.3d 567 ("*Lamizana Two*"), this Court addressed two of Mr. Lamizana's six errors—sufficiency of the evidence and a newly-raised *Ramos* issue—but pretermitted the other four. This Court found the evidence sufficient and, thus, found the sufficiency error lacked merit. On the *Ramos* issue, this Court remanded to the district court with instructions to review the record and to conduct further proceedings to ascertain whether the verdicts convicting Mr. Lamizana of two serious offenses—two counts of aggravated rape—were not unanimous. This Court further instructed the district court to provide a *per curiam* stating the outcome of its review and proceedings. *Lamizana Two*, 21-0254, p. 33, 336 So.3d at 587.

_____

[4] Mr. Lamizana assigned as error the following six errors:

    1.     Unqualified witnesses testified with respect to the credibility of the victims.

    2.     Excluding the testimony of Monique Hayes, the Department of Children and Family Services ("DCFS") investigator, violated the defendant's constitutional right to present a defense and his right to confrontation by denying him impeachment evidence. Its exclusion was not harmless.

    3.     The State's closing argument was improper; it diverted the jury's attention from the lack of reliability in the victims' statements and improperly attacked the integrity and presentation of defense counsel.

    4.     Evidence was insufficient to support the defendant's convictions.

    5.     The record fails to show unanimous verdicts that satisfy due process—the *Ramos* issue.

    6.     The imposed mandatory life sentences were excessive.

On remand, the district court held several evidentiary hearings.[5] Following those hearings, the district court provided a *per curiam*, in December 2023, stating the following regarding the issue of whether the jury verdict was unanimous on both counts:[6]

> This court has uncovered no evidence of either a unanimous or nonunanimous jury verdict in the case file or transcripts which it has on record. Therefore, given that this is a post-conviction matter, the burden of producing such evidence lies with the defendant.

> Over the course of the evidentiary hearings held on the above matters, the court heard testimony from the second chair defense attorney, Ms. Mariah Holder, which revealed that she had second hand knowledge that the jury returned a non-unanimous verdict; however, this court has not heard from any of the jurors themselves, nor has it seen any of the jury polling slips upon which Ms. Holder's recollection is based. Given the lack of direct evidence regarding juror unanimity, this court is unwilling to reopen the defendant's case under the current circumstances.

---

[5] In May 2023, the district court ruled that it was the defendant's—Mr. Lamizana's—burden to produce evidence that the verdict was not unanimous. In July 2023, the district court denied Mr. Lamizana's Motion for New Trial and found that the court had no additional evidence to demonstrate the verdict was not unanimous. Nonetheless, but the district court set another hearing to allow the parties to produce additional evidence. Thereafter, on September 20, 2023, the defense introduced a sworn affidavit from Mr. Lamizana's second-chair trial attorney—Mariah Holder—as evidence that the verdict was not unanimous. One week later, the district court held an evidentiary hearing at which the defense presented Ms. Holder's testimony, expanding on her previously filed affidavit.

[6] While this matter was on a limited remand by this Court for the district court for it to clarify the *Ramos* issue, Mr. Lamizana raised a new issue—a *Brady* issue. *See Brady v. Maryland*, 373 U.S. 83. 83 S. Ct. 1194; 10 L. Ed. 2d 215 (1963); *see also Giglio v. United States*, 405 U.S. 150 (1972). The *Brady* issue related to the thirteen-page DCFS report that was first introduced at the evidentiary hearing to allow Ms. Hayes' testimony to be taken. In its *per curiam*, the district court addressed and rejected the *Brady* issue. The district court observed that "after an in-camera review of the DCFS report which the defendant alleges was precluded to his detriment, this court found nothing in the report which was either material or exculpatory to the defendant. Therefore, the defendant's request for a new trial is denied." On appeal, we decline to address the *Brady* issue because it was beyond the scope of this Court's limited remand order. *See State ex rel. D.A.*, 09-228 (La. App. 3 Cir. 5/13/09) (*unpub.*), 2009 WL 1353533, *4 (observing that "D.A. cannot be allowed to now raise claims beyond the scope of this court's remand orders"). Regardless, as discussed elsewhere in this opinion, we find nothing in Ms. Hayes' testimony or the two DCFS reports that were introduced at the evidentiary hearing on remand warrants granting Mr. Lamizana a new trial.

This third appeal followed. For the following reasons, we affirm Mr. Lamizana's convictions and sentences.

## FACTS, PROCEDURAL BACKGROUND, AND DISCUSSION

A complete statement of facts was set forth in this Court's previous opinions—*Lamizana One* and *Lamizana Two*—and will not be repeated here. Simply stated, a jury convicted Mr. Lamizana of two counts of aggravated rape. The victims were Mr. Lamizana's two step-children—E.T.1 and E.T.2. The district court sentenced Mr. Lamizana to two concurrent terms of life imprisonment.

In this third appeal, only five issues remain before this Court:[7] (i) a *Ramos* issue—non-unanimous jury verdict; (ii) a right to a defense issue—exclusion of Ms. Hayes' testimony at trial; (iii) an evidentiary issue—improper witnesses as to victims' credibility; (iv) an improper closing argument issue; and (v) an excessive sentence issue. We separately address each issue.

*Ramos issue*

The criteria for *Ramos* to apply are present here. Mr. Lamizana's case was pending on direct review when *Ramos* was decided; and he was convicted of two serious, felony offenses. Hence, if the jury verdict on either count was not unanimous, Mr. Lamizana is entitled to a new trial.

---

[7] As noted elsewhere in this opinion, Mr. Lamizana assigns six errors on appeal. In *Lamizana Two*, this Court addressed, and rejected, Mr. Lamizana's fourth assigned error that the evidence was insufficient. We decline to revisit that issue. We address the four issues pretermitted in *Lamizana Two* and the *Ramos* issue.

Although Mr. Lamizana's trial attorneys failed to request the jury be polled,[8] Mr. Lamizana did not waive the *Ramos* issue.[9] The jurisprudence has held that "a challenge to the unanimity of the verdict is an error patent under Louisiana law; and, as such, an objection to the jury's verdict, in the form of polling the jury, is not required." *Lamizana Two*, 21-0409, p. 7, 366 So.3d at 421 (citing *State v. Monroe*, 20-00335 (La. 6/3/20), 296 So.3d 1062); *see also State v. Wilson*, 20-00128, p. 1 (La. 6/3/20), 296 So.3d 1045, 1046.

While the appeal in *Lamizana Two* was pending, this Court issued an order to the district court to search its records. The district court responded that "it had searched its record of this case and was unable to locate any juror polling slips or discover any additional information indicating the number of jurors voting to convict Mr. Lamizana." *Lamizana Two*, 21-0409, p. 7, 366 So.3d at 421. Given the record was devoid of jury polling slips or any other indication of whether the jury verdict was unanimous, this Court remanded this matter to the district court with instructions that it "clarify the record on the crucial issue of whether the jury's

---

[8] The trial transcript reflects that defense counsel failed to request that the jury be polled. In his supplemental brief, Mr. Lamizana contends that Ms. Holder's reference in her testimony to Mr. Roche seeing the "jury slips" establishes that the jury in this case was polled. This contention lacks merit. As we found in *Lamizana Two*, the jury was not polled.

[9] Moreover, Mr. Lamizana, before trial, filed a motion to declare former La. C.Cr.P. art. 782(A) and La. Const. Art. 1, § 17 unconstitutional to the extent those provisions allowed for non-unanimous jury verdicts in this non-capital felony case. The district court denied the motion. Mr. Lamizana points out in his supplemental brief that "[t]he jury was instructed that only ten votes were required to convict." Even assuming this was the case, the Louisiana Supreme Court has held that "[t]he erroneous jury instruction alone does not constitute a structural error and defendant must show he suffered harm from it before the conviction will be reversed." *State v. Hicks*, 23-00969, p. 1 (La. 2/6/24), 378 So.3d 743, 744. There, the Supreme Court reversed the court of appeal's decision, which granted *Ramos* relief and remanded for a new trial; reinstated the jury's verdict and remanded to the district court to conduct further proceedings to ascertain whether the verdict was not unanimous. *Id.*

verdicts were unanimous." *Lamizana Two*, 21-0409, p. 8, 366 So.3d at 421 (citing

*State v. Norman*, 20-00109 (La. 7/2/20), 297 So.3d 738; and *State v. Robinson*, 21-

0254 (La. App. 4 Cir. 2/18/22), 336 So.3d 567 ("*Robinson*"), *writ denied*, 23-

00661 (La. 12/19/23), 374 So.3d 982, *cert. denied*, ___U.S.___ (6/3/24)).[10]

The district court's ruling on the *Ramos* issue, set forth in its *per curiam*

quoted elsewhere in this opinion, has two parts: (i) classification of this as a post-

conviction matter on which the defendant, Mr. Lamizana, has the burden of proof;

and (ii) determination that the lack of direct evidence regarding jury unanimity

requires that Mr. Lamizana's motion for new trial be denied. We separately

address each part.

Burden of Proof

In a criminal case, only two levels of review exists—direct review and

collateral (post-conviction) review.[11] The relevance of this classification is that, in

a collateral review proceeding, the defendant has the burden of proof by statute.

*See* La. C.Cr.P. Art. 930.2 (providing that "[t]he petitioner in an application for

post conviction relief shall have the burden of proving that relief should be

_____

[10] Because the *Ramos* issue presented here is similar to the *Ramos* issue presented in *Robinson*, this Court stayed this appeal on remand pending the United States Supreme Court's decision on Mr. Robinson's petition for certiorari, which was denied on June 3, 2024.

[11] As Justice Crichton recently explained:

> The Code of Criminal Procedure presents two options for the review of a criminal conviction: direct appeal, pursuant to La. C.Cr.P. art. 911, *et seq.*, and collateral review, i.e., post-conviction proceedings, pursuant to La. C.Cr.P. art. 924, *et seq.* Our legislature has pronounced no other options; the Code offers no middle ground in which a case could languish.

*State v. Vaughn*, 22-00214, p. 1 (La. 5/5/23), 362 So.3d 363, 367 (Crichton, J., dissenting), *reh'g denied*, 22-00214 (La. 6/27/23), 365 So.3d 515, and *cert. denied*, ___ U.S ___, 144 S.Ct. 554, 217 L.Ed.2d 295 (2024).

granted"). Contrary to the district court's characterization, this case is not a post-conviction proceeding. This Court in remanding for clarification in the *Ramos* issue neither affirmed nor reversed Mr. Lamizana's convictions. This case remains on direct review.

The procedural posture of this case—direct review with a remand for clarification of a *Ramos* issue—is the same as in *Robinson*; indeed, this Court in *Lamizana Two* expressly adopted the approach we followed in *Robinson* and remanded for clarification of the record on the issue of jury unanimity. Following the remand in *Robinson*, this Court concluded—albeit implicitly—that the burden of proof was on the defendant to establish the jury verdict was not unanimous. We observed that when, as here, it cannot be determined affirmatively if the jury verdict was unanimous, the defendant is not entitled to *Ramos* relief.

Highlighting the fact that we resolved the inability to establish if the jury was unanimous against the defendant, the dissenting judge in *Robinson* pointed out that "[t]his is a case of first impression in this Court where the unanimity of the jurors cannot be determined upon remand to the district court" and observed this would impact "future *Ramos* appellants when the record is similarly unclear." *Robinson*, 21-0254, p. 12, 382 So.3d at 208 (Atkins, J., Concurs in Part and Dissents in Part). The impact of an unclear record, by nature, turns on the placement of the burden of proof. The majority in *Robinson*, albeit implicitly, placed the burden on the defendant. When a defendant cannot meet the burden of

proving the jury verdict was non-unanimous, the defendant's *Ramos* claim cannot succeed. In so finding, this majority in *Robinson* observed as follows:

> Here, nothing in the record exists to affirmatively indicate that the verdicts convicting Defendant were anything but unanimous. The district court asked the jury foreperson if there were at least ten jurors in agreement, and the response was affirmative. No other evidence in the record, transcripts, or clerk's office shows that the jury's decision was less than unanimous. Unlike [*State v.*]*Fortune*, [19-0868 (La. App. 4 Cir. 11/18/20), 310 So.3d 604,] the record does not contain representations by trial counsel or confirmation by the presiding district judge that the jury was not unanimous.

*Robinson*, 21-0254, p. 8, 382 So.3d at 205. Accordingly, this Court in *Robinson* denied the defendant's *Ramos* claim for a new trial.

Placing the burden of proof on the defendant in this context is buttressed by both a statutory presumption and general rule. The presumption is that judicial proceedings are regular. *See* La. R.S. 15:432 (providing that "[a] legal presumption relieves him in whose favor it exists from the necessity of any proof . . . such is the presumption attaching to the regularity of judicial proceedings . . ."). The general rule is that the party seeking relief bears the burden of proof. *See* La. R.S. 15:439 (providing that "[t]he burden of proof is upon him alleging the existence of a fact").

There is no authority, in the absence of polling, to assume that a jury's verdict was not unanimous. Given Mr. Lamizana is the party seeking *Ramos* relief, he bears the burden of proving the fact that the jury verdict on both counts was not unanimous. Accordingly, the district court's placement of the burden of proof on the defendant, Mr. Lamizana, is correct.[12]

---

[12] The placement of the burden on the defendant on direct review to establish the jury verdict was not unanimous is buttressed by Justice Griffin's observations in her dissent in *State v. Reddick*, 21-01893, p. 1, n.1 (La. 10/21/22), 351 So.3d 273, 293; and her concurrence in *Cade v.*

<u>Lack of Direct Evidence</u>

The jurisprudence has required direct evidence of a non-unanimous jury verdict to establish a *Ramos* violation. Jury polling slips "are the best evidence of the jury votes." *State v. Jones*, 18-0973, p. 3 (La. App. 4 Cir. 2/3/21), 314 So.3d 20, 22; *see also Cade*, 21-00660, p. 1, 326 So.3d 229 (J. Griffin, concurring) (observing that "this is primarily done with jury polling forms"). Other forms of evidence have been found to suffice. *See Fortune*, 19-0868, p. 2, 310 So.3d at 604.

Here, Mr. Lamizana failed to present any direct evidence that the jury verdict on either count was not unanimous. The sole evidence Mr. Lamizana produced was testimony from his second-chair trial attorney—Ms. Holder—at the hearing and in an affidavit. But, Ms. Holder's testimony reflected that she lacked any first-hand knowledge of the jury's vote. Ms. Holder's affidavit states, in pertinent part, as follows:

- I was "second chair" attorney on Mr. Lamizana's case when it went to trial in January 12, 2016.

- There are many reasons I remember this case, including that it was one of my first cases as second chair where a client faced a life without parole sentence.

- It is my recollection that the jury reached a non-unanimous verdict in this case. I recall that I was disappointed in the verdict and it is my recollection that I found some solace that the verdict was not unanimous.

Elaborating on her affidavit, Ms. Holder testified as follows:

---

*State*, 21-00660, p. 1 (La. 10/19/21), 326 So.3d 229. Dissenting in *Reddick*, she observed that "mere allegations by a defendant that they were convicted by a non-unanimous verdict are insufficient to warrant relief." *State v. Reddick*, 21-01893, p. 1, n.1 (La. 10/21/22), 351 So.3d 273, 293. Concurring in *Cade*, Justice Griffin observed that "practical realities dictate that not every defendant purportedly convicted by a non-unanimous jury would benefit [from the *Ramos* decision]." She stressed that the major obstacle defendants face is proof; she observed that "[d]efendants still generally bear the burden to show they have been convicted by a non-unanimous jury." *Cade v. State*, 21-00660, p. 1 (La. 10/19/21), 326 So.3d 229.

>	And I remember Ashley Spears was trying the case with Iain Dover for the State. It was myself and Mr. Roche. And Mr. Roche and Mr. Dover approached the bench to look over the jury slips, which was something that I was previously unfamiliar with. Myself, I stayed at the defense table with Mr. Lamizana. My recollection is that Ashley Spears also stayed at the State table, and that it was Mr. Dover and Mr. Roche who approached.

>	When Mr. Roche returned to the defense table, he confirmed that it was—that they were valid guilty verdicts as to both counts, but that we could take some consolation in the fact that it was nonunanimous.

Ms. Holder never saw any jury polling form or jury slips.[13] Her affidavit and testimony both were based solely on a statement by the first-chair trial attorney—Leon Roche—who was not presented as a witness. Moreover, at the evidentiary hearing, the district judge suggested to defense counsel that Mr. Roche's testimony would be helpful in resolving this issue. Despite the district court's suggestion, defense counsel submitted without providing Mr. Roche's testimony.[14] The district court thus found, based on the lack of direct evidence that the jury was not unanimous, that Mr. Lamizana was not entitled to a new trial. We agree. This assignment of error is unpersuasive.

*Right to Defense Issue*

Both the United States and Louisiana constitution—U.S. Const. Amendments XI and XIV and La. Const. art. 1 §16—guarantee criminal defendants the right to present a defense, including the right to compel witnesses in

---

[13] Mr. Lamizana contends that Ms. Holder's reference to Mr. Roche seeing the jury slips establishes that the jury in this case was polled is misplaced. The trial transcript reflects that defense counsel failed to request that the jury be polled.

[14] According to the State's memorandum filed in district court, the first chair defense attorney, Leon Roche, was reached by phone in October 2023, and indicated that his recollection was "generally consistent with Ms. Holder's testimony." There was no transcript provided of the telephone statement; it is not clear whether it was on the record. The State's memo further states that the prosecutor "has inspected the DA file and been unable to find any juror names (other than a juror who was excused midtrial, and thus not part of the verdict)."

their favor. *See State v. Griffin,* 15-0125, p. 23 (La. App. 4 Cir. 9/16/15), 176 So.2d 561, 575. A defendant must be allowed to present reliable evidence on relevant matters. *Id.* But, a trial court's ruling infringing on the confrontation right is subject to harmless error analysis. *State v. Allen*, 12-1118, p. 28 (La. App. 4 Cir. 11/20/13), 129 So.3d 724, 740.

Mr. Lamizana contends that the district court's refusal to allow the DCFS investigator— Ms. Hayes—to testify at trial constituted a violation of his right to present a defense. Mr. Lamizana raised this same claim in his first appeal, arguing that the district court erred in denying his motions for mistrial and for a new trial based upon the exclusion of Ms. Hayes as a witness. At that time, because the testimony that Ms. Hayes would have offered at trial was unknown, this Court granted relief, observing that "we cannot discern whether the testimony of Ms. Hayes or the records relating to her interview would undermine the credibility of the victims' testimony and, if so, the extent to which the absence of Ms. Hayes' testimony or records relating to her interview contributed to the verdict." *Lamizana One,* 16-1017, pp. 7-8, 222 So.3d at 63. The Louisiana Supreme Court agreed that the record was insufficient in that a determination as to whether Ms. Hayes' testimony was improperly excluded and that the effect of its exclusion on the verdicts could not be made. *Lamizana,* 17-1490, p. 2, 263 So.3d at 872. But, rather than extending Mr. Lamizana substantive relief, the Supreme Court remanded the matter to the district court to conduct an evidentiary hearing at which Ms. Hayes could testify and a determination could be made as to whether said testimony undermined the credibility of the victims' testimony and, if so, the extent to which the absence of said testimony contributed to the guilty verdicts.

In November 2021, the district court issued its ruling, but it failed to address whether Ms. Hayes' testimony undermined the victims' credibility and, if so, the extent to which the absence of Ms. Hayes' testimony contributed to the guilty verdict on both counts. Instead, the district court merely acknowledged that it had heard and accepted Ms. Hayes' testimony, along with the two DCFS reports.

A review of Ms. Hayes' February 2020 testimony and the DCFS reports reflects that Ms. Hayes, had she offered said testimony at trial, would not have undermined the credibility of the victims' testimony. First, Ms. Hayes did not interview E.T.2; hence, her (excluded) testimony would have been irrelevant with respect to E.T.2's credibility. Second, Ms. Hayes' testimony cast no aspersions on E.T.1's credibility.

A review of Ms. Hayes' testimony reflects that the vast majority of defense counsel's questioning related to Ms. Hayes' interview with Ms. Thomas, not E.T.1. Ms. Hayes testified that she had no first-hand knowledge of E.T-1 speaking to Ms. Thomas or what E.T.1's conversation with Detective Pruitt was before she was interviewed at the Child Advocacy Center. Thus, Ms. Hayes had no information about whether E.T.1's testimony was tainted by either Ms. Thomas or Detective Pruitt. Further, contrary to defense counsel's suggestion, Ms. Hayes testified that, to her knowledge, Ms. Thomas did not coach E.T.1 regarding what to say with respect to the abuse she suffered from Mr. Lamizana. Ms. Hayes confirmed that Ms. Thomas was not present when she interviewed E.T.1 and, as such, could not have coerced E.T.1 regarding what to tell Ms. Hayes. Ms. Hayes concluded by stating that her report reflected that E.T.1 "provided a clear and detailed history of penile anal penetration by her stepfather, [Mr.] Lamizana."

In his brief, Mr. Lamizana sets forth a list, which was provided by defense counsel following the February 2020 evidentiary hearing, of multiple ways defense counsel allegedly would have used Ms. Hayes' testimony had defense counsel been allowed to offer it at trial.[15] Again, most of defense counsel's questioning of

---

[15] This list specified that Hayes' testimony would have been used as follows:

- [T]o show that CAC protocol to prevent suggestion and influence from occurring were not followed in this case. [Ms.] Hayes testified that Ms. Thomas, Detective Pruitt and herself all spoke to [E.T.1] before the forensic interview. Counsel would have argued to the jury that the probability of suggestion or tainting the video statements was high because of the improper investigations conducted by both Mrs. Hayes and NOPD.

- [T]o show the DCFS and NOPD investigations were inadequate to make any conclusions as to the credibility of Ms. Thomas or the children as they had not considered any of the information provided by Mr. Lamizana, the influence of demise of the relationship, the evidence of physical abuse of the children by Ms. Thomas, and the coincidence of the allegations being made just as the custody proceedings were beginning. The investigations do not show an intent to find the truth.

- [T]o emphasize that [E.T.2] initially denied any allegations and five months later DCFS did not investigate the allegations he made when he was being physically disciplined by Ms. Thomas; moreover, counsel would have argued that [E.T.2] learned from [E.T.1] that the way to get on his mother's good side and avoid more physical abuse was to invent an allegation against Mr. Lamizana.

- To impeach Ms. Thomas with inconsistent statements she made about her mental health and about the discipline of her children, as both of these issues effected her bias and influence on the children; using Mrs. Hayes' testimony to show that Ms. Thomas was not truthful about these issues would have hurt Ms. Thomas's credibility as to other issues.

- [T]o confirm the existence of Ms. Thomas's mental illness and support the theory of the defense that the break of the relationship exacerbated her illness and provoked her intimidation, abuse and influence on the children.

- [T]o show Ms. Thomas knew to claim correct discipline methods when speaking to DCFS in contrast with other evidence about beating the children and to show Ms. Thomas's ability to influence, manipulate, and intimidate the children. Counsel would have argued to the jury, that Ms. Thomas was not telling the truth to [Ms.] Hayes but rather picked information to get [Ms.] Hayes to substantiate false claims of sexual assault against Mr. Lamizana.

- To show that DCFS produced several versions of records, such that none is complete, accurate or correct as [Ms.] Hayes could not identify the 2019 version, making the implementation of La. R.S. 46:56H impossible. The inconsistencies in statements were exculpatory evidence that should have been produced before trial.

Ms. Hayes at the evidentiary hearing concerned her interactions with Ms. Thomas, not E.T.1. Likewise, several of the ways defense counsel would have used Hayes' testimony concerned attacking the credibility of Ms. Thomas, not the victims. Indeed, Ms. Hayes' testimony could not have been used to attack E.T.2's credibility given that Ms. Hayes never interviewed E.T.2. The basis of this Court's decision in *Lamizana One* that the absence of Ms. Hayes' testimony undermined confidence in the verdict was that we were unable to evaluate whether Ms. Hayes' testimony would undermine the credibility of the victims' testimony, not the victims' mother's (Ms. Thomas') testimony. But, Ms. Hayes' testimony did not undermine the credibility of the victims' testimony.

In support of his claim that the absence of Ms. Hayes' testimony at trial adversely affected the proceedings, Mr. Lamizana cites *State v. Fernandez,* 513 So.2d 1185 (La. 1987). There, the Louisiana Supreme Court reversed the defendant's conviction and ordered a new trial because the defense was prevented from using evidence of the defendant's acrimonious relationship with his girlfriend—the victim's mother. The evidence included a heated argument that took place shortly before the victim made her allegations against the defendant. Mr. Lamizana's reliance on the *Fernandez* case is misplaced. Unlike the

---

- [T]o show inconsistencies in Ms. Thomas's testimony about calling police, [E.T2's] testimony about bed wetting, and how [E.T.2] came to make a statement.

- [T]o show the confusion and mistakes as to Mr. Lamizana's whereabouts during her investigation; [Ms.] Hayes provided Mr. Lamizana's statement to the district attorney but no investigation was done as to his claims about Ms. Thomas.

- [Lastly,] to show inconsistencies with Detective Pruitt's testimony about what was reported to her and her conclusions about the family.

circumstances presented in the *Fernandez* case, here, the jury was made aware that Ms. Thomas—the victims' mother—and Mr. Lamizana had an acrimonious relationship. Ms. Thomas described her relationship with Mr. Lamizana as horrible. Similarly, Mr. Lamizana testified that the couple did not get along. Mr. Lamizana admitted to slapping Ms. Thomas in the past and that Ms. Thomas, in turn, had not only slapped him, but also sprayed him with mace.

Mr. Lamizana also relies upon *State v. Martin,* 519 So.2d 87 (La. 1988) and *State v. Young,* 20-01041 (La. 05/13/21), 320 So.3d 356. In those two cases, the Louisiana Supreme Court set aside convictions finding the district court erred by preventing the defense from presenting evidence of tattoos that was held to be material given the victims' identifications included (or excluded) a certain type of tattoo. Those cases are distinguishable from this one. In those cases, the evidence was material because it refuted the victims' credibility—the victims' identifications. Here, Ms. Hayes' testimony did not refute the victims' credibility.

Finally, Mr. Lamizana relies upon *State v. Bairnsfather,* 591 So.2d 686 (La. 1991), another case where the conviction was reversed because evidence impeaching the victim's credibility was not allowed. There, the defense was not allowed to offer impeachment evidence regarding the nine-year-old victim's alleged "bad reputation for truth and veracity" and "by proving her prior inconsistent statements." *Bairnsfather*, 591 So.2d at 686. The *Bairnsfather* case is distinguishable from this case; here, Ms. Hayes' excluded testimony did not impinge upon the victims' credibility.

Thus, contrary to Mr. Lamizana's contentions, Ms. Hayes' testimony would not have aided his defense; she provided no evidence to bolster Mr. Lamizana's contention that E.T.1 was fabricating the claims against him in an effort to gain

favor with her mother, Ms. Thomas. Accordingly, the district court's alleged error in precluding Ms. Hayes from testifying at trial was harmless. The instant claim for relief is unpersuasive.

*Improper Witnesses as to Credibility*

Mr. Lamizana contends that various State witnesses testified conclusively about the victims' credibility and that the State failed to qualify some of these witnesses as experts. The four State witnesses that Mr. Lamizana cites are:

(i) David Dooley—who was the forensic interviewer who interviewed E.T.1 at the Child Advocacy Center;

(ii) Detective Tyra Pruitt—who was the lead investigator in this case for the New Orleans Police Department's ("NOPD's") Special Victims Section, Child Abuse Unit;

(iii) Dr. Ellie Wetsman—who was stipulated to be an expert in the field of pediatric child sexual abuse and who examined E.T.1 in May 2012; and

(iv) Dr. Jamie Jackson—who was stipulated to be an expert in the field of child abuse pediatrics and who examined and interviewed E.T.2 in October 2012 and wrote a forensic report.

The governing statutory provisions—La. C.Cr.P. art. 841(A)[16] and La. C.E. art. 103(A)[17]—require contemporaneous objections be lodged to trial errors to preserve the issues for appellate review. *State v. Seals*, 95-0305, p. 5 (La.

---

[16] La. C.Cr.P. art. 841 provides, in pertinent part, as follow:

> A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
> …
> C. The necessity for and specificity of evidentiary objections are governed by the Louisiana Code of Evidence.

[17] La. C.E. art. 103(A) provides, in pertinent part, that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Further, this article provides that "[w]hen the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection." La. C.E. art. 103(A)(1).

11/25/95), 684 So.2d 368, 373. The defendant must also "make known the grounds for his objection" to the district court. *State v. Brooks*, 98-0693, p. 9 (La. App. 4 Cir. 2/25/00), 758 So.2d 814, 819. Here, for the most part—the exception being a question posed to Dr. Jackson about whether she had a gut feeling if E.T.2 was lying—Mr. Lamizana's attorneys failed to make contemporaneous objections to the testimony that he now challenges on appeal.

The record reveals no objection to Mr. Dooley's testimony regarding questioning techniques. Likewise, no objection was made to Detective Pruitt's testimony that she believed E.T.1 because her story remained consistent. Moreover, no objection was lodged to Dr. Wetsman's testimony that her physical examination was consistent with E.T.1's story. Nor does the record reflect any objection to Dr. Jackson's testimony that her physical examination of E.T.2 was consistent with E.T.2's story.

As noted, Mr. Lamizana does cite an objection to a question posed to Dr. Jackson about whether she had a gut feeling as to whether E.T.2 was lying. But, Dr. Jackson gave no opinion, stating that she could not judge the veracity of E.T.2's story. Thus, even if the district court erred by overruling that objection, no prejudice resulted. Mr. Lamizana's other generalized complaints about these four State witnesses' testimony have not been preserved for review on appeal. We, thus, decline to address them.

*Improper Closing Argument*

Mr. Lamizana claims he was denied a fair trial by virtue of the State's improper closing arguments. According to Mr. Lamizana, the State's closing argument, during which the prosecutor made false allegations against defense

18

counsel, diverted attention from the weakness of the State's case, which was based solely on the victims' credibility.

A review of the trial transcript reflects that the defense counsel lodged six objections to the State's rebuttal in closing arguments, all of which the district court overruled. First, defense counsel objected to the prosecution's statement that the district attorney may only try cases in which the State possesses a good faith basis to prosecute. Second, when the prosecutor stated that defense counsel "flipped through a stack of blank pages" during his closing arguments, defense counsel objected. Pursuant to his objection, defense counsel was able to refute this falsehood, stating that the "[p]ages were not blank. I had writing on all of them." Third, defense counsel asserted the prosecutor falsely claimed that the defense had decided not to introduce E.T.2's dental records, noting the prosecution's objection during trial to their introduction. Fourth, as to disputes about how old the victims were when the offenses took place, the prosecutor made reference to defense counsel's statement during *voir dire*. Defense counsel's statement was that he had been an attorney for about five or six years; he stated that he is "an adult and doesn't even know how long he's been a practicing attorney." Defense counsel objected, characterizing the remark as a personal attack against defense counsel. Fifth, when the prosecutor held up a prospective exhibit that was not introduced into evidence, defense counsel objected. Again, based on defense counsel's objection, the jury was aware the exhibit the prosecution was holding up was not introduced into evidence. Sixth, defense counsel objected to the prosecutor holding a document in the air during his rebuttal; the defense objected, specifically stating: "I'm just going to object to the demonstrative." Again, all six objections were overruled.

The governing statutory provision is La. C.Cr.P. art. 774, which provides that "argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." This article also provides that "[t]he argument shall not appeal to prejudice." *Id.* Finally, it provides that "[t]he State's rebuttal shall be confined to answering the argument of the defendant." *Id.* But, "Louisiana jurisprudence on prosecutorial misconduct allows prosecutors wide latitude in choosing closing argument tactics." *State v. Dabney*, 15-0001, p. 18 (La. App. 4 Cir. 9/9/15), 176 So.3d 515, 526 (quoting *State v. Legrand*, 02-1462, p. 16 (La. 12/3/03), 864 So.2d 89, 101).

The jurisprudence has recognized that judges have broad discretion in controlling the scope of closing argument. *Id.* Even when a prosecutor exceeds the permissible bounds of argument codified in La. C.Cr.P. art 774, a conviction will not be reversed unless the reviewing court is completely convinced that the argument influenced the jury and contributed to the verdict. *Legrand*, 02-1462, p. 16, 864 So.2d at 101.

Any infringements of La. C.Cr.P. art. 774 found in the six objections was minimal and had little, if any, persuasive impact. Nothing in the record reflects that this Court should be completely convinced that these arguments influenced the jury and contributed to the verdicts. This assignment of error is unpersuasive.

*Excessive Sentences*

Mr. Lamizana, before sentencing, filed a motion for a downward departure from the statutory minimum—the mandatory life sentence for rape. On the date of

sentencing, the district court denied the motion. [18] Mr. Lamizana contends that the sentence imposed on him for two counts of aggravated rape of two concurrent life sentences was excessive.

Both the United States and Louisiana constitutions—U.S. Const. Amend. VIII, and La. Const. Art. I, §20—prohibit the imposition of cruel and unusual punishment. Additionally, La. Const. Art. I, §20 also prohibits excessive punishment. The excessive punishment prohibition is broader than the cruel and unusual punishment prohibition. *State v. Barbain*, 15-0404, p. 28 (La. App. 4 Cir. 11/4/15), 179 So.3d 770, 787. Louisiana jurisprudence has repeatedly rejected the assertion that a mandatory life sentence for rape is excessive. *Id*., 15-0404, p. 31, 179 So.3d at 788.[19] Mandatory minimum sentences are presumed constitutional. *State v. Johnson*, 97-1906, p. 7 (La. 3/4/98), 709 So.2d 672, 676. In order to rebut this presumption, a defendant must clearly and convincingly show that:

> "He is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case."

---

[18] We note an error patent regarding sentencing. At the February 2016 hearing, the district court failed to abide by the twenty-four-hour sentencing delay mandated by La. C.Cr.P. art. 873. But, the sentence imposed for each count was mandatory, and it is well-established that the failure to observe the twenty-four-hour rule is harmless where the sentence imposed is mandatory. *See State v. Pollard*, 14-0445, p. 21 (La. App. 4 Cir. 4/15/15), 165 So.3d 289, 304 (observing that the failure to observe twenty-four hour delay is harmless when the sentence imposed is mandatory) (citing *State v. Green*, 10-1355, p. 12 (La. App. 4 Cir. 6/22/11), 69 So.3d 695, 703; *State v. Seals*, 95-0305, p. 17 (La. 11/25/96), 684 So.2d 368, 380.) Accordingly, this error patent requires no relief. As discussed elsewhere in this opinion, a second error patent in this case was raised by Mr. Lamizana—the issue of whether the jury verdict on both counts was not unanimous (the *Ramos* issue).

[19] This Court, in *Barbain*, cited the following cases: *State v. Stokes*, 36,212, p. 15 (La. App. 2 Cir. 9/18/02), 828 So.2d 631; *State v. Williams*, 10-265 (La. App. 5 Cir. 11/9/10), 54 So.3d 98; *State v. Layva-Martinez*, 07-1255 (La. App. 3 Cir. 4/30/08), 981 So.2d 276; *State v. Chandler*, 41,063 (La. App. 2 Cir. 9/8/06), 939 So.2d 574; and *State v. Barnes*, 01-0113 (La. App. 4 Cir. 11/7/01), 800 So.2d 1124.

*Id.*, 97-1906, p. 8, 709 So.2d at 676 (quoting *State v. Young*, 94-1636, pp. 5-6 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 528 (Plotkin, J., concurring)).

Here, Mr. Lamizana asserts that he has little criminal history; he is a hard worker; and he did not use weapons or force in committing the offenses. He further asserts that there was lack of injury, presumably to the victims. Even assuming these assertions are accurate, they fail to show that Mr. Lamizana's situation is exceptional, requiring a departure from the mandatory term prescribed by the sentencing statute. Accordingly, this assignment of error is unpersuasive.

## DECREE

For the foregoing reasons, we affirm Defendant's convictions and sentences.

**CONVICTIONS AND SENTENCES AFFIRMED**